BOWLING, Justice,
dissenting:
I join in the dissenting opinion of Justice Hawkins. My purpose in writing this supplemental dissenting opinion is to discuss the majority setting out a law that before appellees could recover, they had the burden of proving by a preponderance of the evidence that the appellant railroad company killed the deceased intentionally, wilfully or wantonly.
In my humble opinion, the people (including lawyers) of this state clearly should be advised as to the courtroom hurdle they face in these railway-road crossing collisions resulting in injuries and/or death. The railroad companies now have a license to kill when crossing a road out in the country that leads to a residence. The best way I know to explain what the majority is doing is to relate a hypothetical case, which along with hundreds of hypothetical cases easily could occur.
First, I should point out that in discussing the danger facing the people of the state, I am talking mainly about the rural areas which encompass the vast part of the state. I believe the majority would agree that there are not railroad crossings on the interstate highway system.
For clarification, may I assume a small town through which runs a mainline railroad track. The principal highway in the area may have at one time been the main highway, but now, because of the interstate system, is only the highway used by the residents of the town and of the countryside who shop and go to church in the town. I believe we can take further judicial knowledge that as the highway runs along one side of the railway line, there are many hundreds of so-called private crossings over the railroad line for the purpose of reaching the residences of people living in the area and other similar areas. Now let us assume two hypothetical situations which appear simple, and being told by a simple person, but are nevertheless true under the majority opinion.
The John Doe family and the Joe Roe family go to the same church in the town. The Roes live in town and the Does live in the country “across the railroad tracks,” the same as many of the neighbors, and the road only goes to that residence and surrounding land. The Does, living in the country, invited the Roes to supper. In that case, and under the majority opinion, when the Roes cross the railroad track, they are “invitees” and the railroad owes them a duty to use reasonable, proper and due care to prevent their injury and death.
Suppose then the next night, the Roes decide to drive out to the Does to solicit funds for the next Sunday School party. They have not been invited, and the Does do not know they are coming. They had rather watch T. V. Under the majority opinion, when they cross the railroad track the second night and are either injured or killed, it is necessary to prove by a preponderance of the evidence that the railroad did its damage intentionally, wilfully or wantonly. I am wholly unable to see any distinction. Members of the bar who keep up with prevailing trends in legal principles know that this situation is being corrected by judicial fiat in various parts of the country. I think it is time to do likewise here. All principles of law are based on the simple principle of “what is right.” The many books, pamphlets and other publications setting out this definition, if all were collected, would fill a library. I do not need to quote from any of them here. I respectfully submit that the difference in the two above-related hypothetical situations, as dictated by the majority opinion, just is not right.
Bringing the situation closer to the case before us, the deceased became a trespasser because he was going hunting west of the railroad line and the owner had not specifically invited him to do so. In the first place, the photographs show buildings on the west side of the railroad line to be reached by the “Gross Road” in question. The stigma of being a trespasser only applies to the land of the construction company situated somewhere west of the crossing. Its definite location is not specifically spelled out in the record. The majority 'opinion has to conclude positively that the deceased would have entered on the con *644 struction company’s land and proceeded to hunt. There is completely discounted the possibility that his car might have broken down immediately after clearing the west railroad track, or it could have become stuck, or the deceased even could have changed his mind and turned around and driven back across the track. Nevertheless, as he left home to go hunting on the construction company’s land, he immediately became a trespasser on the railroad track. I cannot reconcile my legal thinking in that direction.
A further fact regarding the railroad company’s appreciation of this public-private crossing is that it had placed a “whistle board” which required the engineer to blow his train whistle to warn persons approaching the crossing. Would a failure to blow the whistle, as required, be a wilful act toward a trespasser on the crossing or merely a negligent act, a duty not owed the deceased? Unfortunately, I cannot answer that question and for that reason and the other reasons hereinbefore set out, I respectfully dissent from the holding that it was reversible error not to require the widow and children of the deceased to prove that he was killed intentionally, wilfully or wantonly.